UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BBC CHARTERING & LOGISTIC GMBH
& CO. K.G.,

    Plaintiff,

    v.

ROTEC INDUSTRIES, INC.,

    Defendant.

No. 08 CV 2279
Judge James B. Zagel

**MEMORANDUM OPINION AND ORDER**

**I. BACKGROUND**

Plaintiff BBC Chartering & Logistic GmbH & Co. K.G. ("BBC") previously won summary judgment on the issue of breach. They now move for summary judgment on the issue of damages, claiming that damages were liquidated by a "dead freight" provision in the booking note. Plaintiff's motion is denied.

**II. STATEMENT OF FACTS**

BBC is an owner and operator of vessels for the carriage of goods by sea. On September 15, 2007, Defendant Rotec entered into a maritime booking note ("Note") with Clipper Elite Carriers (Americas) Inc. ("Clipper") and APC, Dubai ("APC") for the ocean carriage of one "KD tower crane, about 2.763,8484 cubm" from Mumbai, India, to Palua, Venezuela.

Pursuant to the booking note, the loading of the cargo was to take place between October 1 and October 18, 2007. BBC nominated one of its vessels and directed it to Mumbai. At some point, BBC advised Rotec that the vessel that would carry the crane, the M/V BBC ASIA (the "Vessel"), and would arrive in Mumbai on or around October 7, 2007. On October 3, 2007,

Rotec contacted APC advising it that the crane would not be ready for the vessel's arrival. On October 4, 2007, Rotec further advised that it was facing unavoidable delays with local Indian officials, and that it was unsure when the cargo would be released. On October 5, 2007, Rotec confirmed that it would not be able to load on time.

In the October 3-5 time frame, the Vessel was not in Mumbai nor anywhere in India, but in and around ports in the Persian Gulf. The voyage account for the Vessel has her arriving in Jubail, Saudi Arabia on October 2nd at 6:18 a.m. and departing there on October 4th at 10:48 a.m. The next stop was Fujairah in the United Arab Emirates. Arrival there was October 5th at 5:42 p.m. and departure was that night at 11:00 p.m. The next registered stop was in the Suez Canal on October 13, 2007. The voyage ended in Punta Cardon (presumably the Punta Cardon in Venezuela, though it is not specified) after the Vessel had delivered yachts from Genoa, Italy to Port Everglades, Florida.

On April 22, 2008, BBC filed suit against Rotec for breach of contract, claiming cancellation damages totaling $497,520.00. I granted BBC summary judgment on the issue of breach, and the parties thereafter appeared headed to a bench trial solely to determine damages on the breach. BBC now moves for summary judgment on damages, too, claiming that a provision in the Booking Note liquidated the damages at the figure noted above.

### III. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

I consider the record in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-movant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). I will accept the non-moving party's version of any disputed fact only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

## IV. DISCUSSION

Rotec argues that the "dead freight" provision should not apply because it is unenforceable as a penalty clause. I need not reach that issue, however, because I find that the clause was not triggered in the first instance on the facts of this case.

The clause BBC relies on as a liquidated damage provision states in relevant part:

> If the Merchant or his Agent fails to tender the cargo when the vessel is ready to load or fails to load as fast as the vessel can receive the cargo, the vessel shall be entitled to leave the port without further notice and the Merchant shall be liable to the Carrier for dead freight....

"Dead freight" is a term well understood in the shipping industry. It is "the difference between the freight cost of the cargo not shipped due to the breach, minus the extra expenses the vessel would have incurred in shipping the withheld cargo." *Kommanditskab Supertrans v. Ocean Contract Carriers, Inc.*, 1986 U.S. Dist. LEXIS 22717, *12 (S.D.N.Y July, 16, 1986). A previous opinion of the same court described it as "a lost opportunity cost," reflecting the fact that "[t]he vessel has set aside so much space for a particular cargo, which, but for that

3

commitment, it could have set aside for another cargo and been paid for carrying." *Hellenic Lines, Ltd. v. Commodities Bagging & Shipping, Process Supply Co., Inc.* 611 F. Supp. 665, 675 (D.N.J. 1985).

BBC argues for a special application of dead freight, claiming that the parties agreed "that Rotec would be liable for dead freight upon breach of the Note." The provision is thus "the equivalent of liquidated damages for such a breach."

The problem for BBC is that the provision was never triggered. The triggering event for the clause is that "the Merchant...fails to tender the cargo *when the vessel is ready to load*." This would entitle the vessel "*to leave the port* without further notice." Only then would Rotec "be liable to the Carrier for dead freight." Viewed in the light most favorable to Rotec, the voyage account shows the Vessel was either in port or in the immediate proximity of Fujairah, U.A.E. when Plaintiff was informed of the breach. Viewed in any light, the Vessel could not have been close to the port of Mumbai at the time that the breach occurred, so it certainly was not "ready to load" Rotec's crane. Nor, clearly, was it set to "leave the port" (of Mumbai) with empty cargo space, such that a charge of dead freight would be appropriate.

Plaintiff has cited no cases - and this court could find none - where dead freight was assessed though a vessel made neither the port of origin nor the contracted destination. The mine run of cases involving "dead freight" are where a merchant contracts with a vessel to carry a bulk of some commodity. The contract will specify a certain minimum amount of goods to be shipped, that cargo minimum will not be reached, and the vessel will receive the dead freight charge for the empty space as if it shipped the minimum amount. *See, e.g., United States v. Open Bulk Carriers*, 727 F.2d 1061, 1063 (11th Cir. 1984) (dead freight for minimum cargo amounts

4

not met); *NYKCool A.B. v. Pac. Fruit, Inc.*, 2010 U.S. Dist. LEXIS 125177 (S.D.N.Y. Nov. 24, 2010) (dead freight awarded in arbitration when shipments made with below-contract volumes); *APL Co. Pte., Ltd. v. JRJ Enters.*, 2010 U.S. Dist. LEXIS 105045 (N.D. Cal. Sept. 24, 2010) (dead freight assessed when contractual "Minimum Volume Commitment" not reached).

To be sure, there are cases that vary slightly from this theme. For instance, in *Hellenic Lines* the vessel left the designated port with none of the contracted cargo because it was convinced that the Merchant had no chance of producing any goods for shipment on time. 611 F. Supp. at 673. Or in another variation, the cargo owner breached by contracting transport with a different vessel notwithstanding its previous agreement with the vessel owner. The court in that case awarded "dead freight" after determining that the plaintiff's vessel was at the designated port of origin, ready to load, when it learned of the breach. *See Nat'l Shipping Co. of Saudi Arabia v. Diversified Freight Logistics, Inc.*, 2003 U.S. Dist. LEXIS 22831 at *33-*35 (S.D.N.Y. Dec. 19, 2003).

None of this is to say that BBC was not damaged by Rotec's breach. What it means is that this case was not controlled by a clause referencing dead freight and asserted to be a liquidated damages clause. Therefore, Plaintiff must prove the actual damages suffered due to Rotec's breach. In the briefs supporting and opposing this motion, the parties hinted at an actual damages amount. If that amount is supported by undisputed evidence, the Plaintiff is given leave to file an additional summary judgment motion establishing its actual damages. If not, the Plaintiff can prove up its damages at trial.

5

## V. CONCLUSION

Plaintiff's motion for partial summary judgment is DENIED.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: February 23, 2011